UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| A.R.<br><br>Plaintiff,<br><br>v.<br><br>SHIV GLOBAL HOTEL, LLC,<br><br>Defendant. | CIVIL ACTION FILE<br><br>NO.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff files her Complaint and shows the Court as follows:

**Introduction**

1.

When Plaintiff A.R. was 16 years old, she was a victim of child sex trafficking at the Knights Inn located at 2859 Panola Road, Lithonia, GA 30058. During October and November 2016, A.R. was sold for sex by a trafficker to numerous buyers per day at the Knights Inn over a multiple week period, until she was finally rescued in an undercover police sting at which time her sex trafficker was arrested. A.R. was not the only victim being sold at the Knights Inn. The backside of the Hotel was rampant with sex traffickers selling young females. Defendant owned and operated the Knights Inn and knew or should have known of the widespread sex trafficking operation that was occurring at the Hotel. As set forth herein, Defendant is liable to Plaintiff for damages arising from the crimes and harms

committed against her. Given the nature of the case, Plaintiff is identified in this Complaint by her initials. Plaintiff's counsel will disclose her full name to defense counsel as soon as they are known or as soon as an appropriate protective order is in place.[1]

2.

Defendant SHIV GLOBAL HOTEL, LLC (hereinafter referred to as the "LLC", the "Defendant" or the "Hotel") is an active Georgia limited liability company. The registered agent for the LLC is Kirtan Patel, who may be served at One Lakeside Commons, 990 Hammond Drive, Ste 800, Atlanta, Georgia 30328.

3.

At all times relevant herein, Defendant owned, operated, maintained, controlled, managed, and/or was responsible for securing the Hotel, from which Defendant benefited financially.

4.

Defendant knew or should have known of both A.R.'s sex trafficking in particular and the rampant sex trafficking and prostitution at the Hotel for years,

---

[1] Plaintiff will be filing a Motion for Protective Order and Leave to Proceed Anonymously based on the nature of the allegations in the Complaint, which include the sex trafficking of A.R. Plaintiff's anonymity will provide for her own personal safety and will protect Plaintiff from the public disclosure of details which are intimate and personal in nature.

before, during, and after Plaintiff's trafficking. Defendant knew or should have known, among other reasons, because:

a. A.R. and other young girls who were being sex trafficked were forced to meet men at the Knights Inn property and accompany the men into rooms on the backside of the Hotel for short visits where they would be sold for sex. A.R. and other trafficking victims wore revealing and inappropriate clothing and they would be approached by male strangers who were driving onto the property and visiting the backside of the Hotel;

b. A.R.'s trafficker posted A.R. on Backpage.com and advertised her as being for sale at the Knights Inn;

c. A.R. was sold to at least 5 different men per day, and A.R.'s trafficker attempted to sell A.R. to even more men, including setting a quota or goal for A.R. to be sold to at least 10 men per day;

d. The above pattern of activity occurred repeatedly in open sight at the Hotel each day, throughout the day;

e. The Hotel and its workers placed sex traffickers and victims on the backside of the Hotel because it provided more privacy and cover for the crimes to continue;

f. While she was trafficked at the Knights Inn, A.R. was sold to

multiple different men and the Knights Inn employees observed A.R. and either knew or should have known she was a victim of sex trafficking;

g. Each day A.R's trafficker would use the cash he had received from A.R. being sold to go to the Hotel's front desk and pay for the room for another day with the sex trafficking cash;

h. While she was trafficked at the Knights Inn, Hotel housekeeping employees visited A.R.'s room. The Knights Inn housekeeping staff would provide A.R. with new towels so she could clean herself after being sold for sex repeatedly, and the Knights Inn employees would remove trash bags from the room containing used condoms and condom wrappers, both of which were signs that A.R. was being sold for sex, and the Hotel housekeeping staff continued to participate in this sex trafficking operation by providing A.R. and the trafficker with these services and supplies;

i. The Hotel's staff saw A.R. and knew or should have known she was obviously being sold for sex, yet they did nothing to intervene. Instead, the Hotel staff continued to participate in the sophisticated network to protect the commercial sex trade, including continuing to essentially hide and attempt to protect the sex trafficking

operation on the backside of the Hotel; and

j. Before, after, and during the time A.R. was being sold, there were numerous other traffickers and victims at the property, so that it was obvious what was occurring and the Hotel knew or should have known that it was benefitting from and actively participating in this massive sex trafficking operation, including the Hotel providing the marketplace for the activity to occur.

5.

Despite all of the above knowledge, Defendant negligently and recklessly failed to take appropriate and reasonable measures to prevent sex trafficking from occurring at the Hotel, including Plaintiff's sex trafficking in particular, and instead actively took steps to allow the trafficking to continue.

6.

At all times relevant to this Complaint, A.R. was a minor child victim of sex trafficking at Defendant's Hotel.

7.

Sex trafficking and prostitution were common occurrences at the Hotel and Defendant chose to ignore, allow, condone, facilitate, support, or permit such activity at the Hotel. Defendant is liable to Plaintiff for the Hotel's

employees and agents' actions and failures to act. Defendant's liability to Plaintiff is straightforward:

a. The Trafficking Victims Protection Reauthorization Act ("TVPRA") provides a cause of action to victims of sex trafficking against "whoever knowingly benefits, financially or by receiving anything of value from participating in a venture which that person ***knew or should have known*** has engaged in an act in violation of the TVPRA." 18 U.S.C. § 1595(a). Defendant knowingly benefited from participation in a venture that it knew or should have known engaged in an act in violation of the TVPRA. While operating the Hotel, a common undertaking involving risk and potential profit, Defendant:

(i) rented a room to Plaintiff's trafficker so Plaintiff could be sold for sex at the Hotel, and

(ii) did so despite what Defendant knew or should have known about Plaintiff being a victim of sex trafficking at the Hotel. As a result of Defendant and/or its employees or agents' conduct, Plaintiff suffered physical and mental harms, and Defendant is liable to Plaintiff for the damages arising from those harms under the TVPRA; and

b. The Hotel constituted a public nuisance under Georgia law because the Hotel negligently or recklessly turned a blind eye and permitted illegal activities to occur at the hotel, including rampant prostitution, sex trafficking, crimes against women, drugs, violence, and other dangerous illegal activity. As a direct result of this nuisance, Plaintiff was sold for sex at the Hotel, causing her special damages.

8.

Whenever reference is made in this Complaint to any act, deed, or conduct of Defendant, the allegation is that Defendant engaged in the act, deed, or conduct personally or through one or more of its officers, directors, agents, employees, or representatives who were actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Hotel.

9.

Further, a person under the age of 18 cannot consent to having sex in exchange for money under any circumstance. Any sale of sex in exchange for money involving a person under eighteen (i.e., "minor sex trafficking") is *criminal* sex trafficking under federal law. 18 U.S.C. § 1591(a). Minor sex trafficking does not require evidence that the victim was subject to "force, fraud, or coercion." 18 U.S.C. § 1591(a)(1), *et seq.* Every person who engages in commercial sex with a minor is

trafficking that minor under 18 U.S.C. § 1591(a)(1). Still, Plaintiff A.R. was sold for sex at the Hotel, and despite such crimes obviously occurring, Defendant failed to intervene in any way to report or stop such crimes, and instead, Defendant participated in allowing the crimes to continue.

10.

Plaintiff brings this suit against Defendant to recover for the physical, emotional, and mental harm caused by her sexual exploitation at the Hotel, which was permitted to occur as a direct and proximate result of Defendant's negligent, reckless, and willful failures to prevent prostitution, crime, violence, and sex trafficking from occurring at the Hotel.

## Parties, Jurisdiction, and Venue

11.

A.R. was a 16-year minor at the time of her sex trafficking alleged herein.

12.

At the time of A.R.'s trafficking, Defendant owned, managed, supervised, operated, oversaw, controlled the operation of, and rented rooms at the Hotel, from which Defendant benefited financially.

13.

Defendant can be served through its registered agent, Kirtan Patel, who may be served at One Lakeside Commons, 990 Hammond Drive, Ste 800, Atlanta, Georgia 30328 .

14.

Jurisdiction and venue are proper as to Defendant, and Defendant was properly served with process in this action.

**Plaintiff A.R.'s Sex Trafficking at the Hotel**

15.

During October 2016, when A.R. was 16 years old, A.R. was working a job at Stonecrest Mall. While she was working at the mall, Plaintiff met a man who convinced A.R. that when she got off work, she should meet and hang out with him.

16.

When A.R. got off work, she met with the man. Eventually, after taking A.R. to the man's father's house, the man proceeded to take A.R. to the Knights Inn Hotel.

17.

During a multiple week period beginning in October 2016, A.R.'s sex trafficker sold A.R. to numerous men at the Knights Inn Hotel. The Knights Inn staff rented a room to A.R.'s sex trafficker on the backside of the Hotel because it provided more privacy for sex traffickers to sell their victims.

18.

While at the Hotel, A.R.'s sex trafficking occurred openly and obviously and was observed by the Hotel employees, who also participated with the trafficker in allowing the trafficking to continue.

19.

A.R., along with numerous other young females who were being sold for sex on the backside of the Hotel, were required to meet buyers outside on the Hotel property and then accompany them into the Hotel room where they would buy A.R. and the other victims for sex.

20.

During the time A.R. was being trafficked for sex, Hotel employees lived at the Hotel themselves or, at minimum, staffed the Hotel 24 hours per day / 7 days per week, and thus, Defendant and/or the other Hotel employees could see the sex-trafficking activity that was occurring openly and publicly on the property.

21.

Hotel employees frequently saw Plaintiff A.R., her trafficker, and the other sex traffickers and sex trafficking victims at the Hotel.

22.

Defendant and/or the other Hotel employees had friendly, close personal relationships with traffickers at the Hotel, including Plaintiff A.R.'s trafficker, and thus would participate and allow the trafficking to continue without interruption.

23.

While Plaintiff A.R. was trafficked for sex at the Hotel, she exhibited numerous well-known and visible signs of a sex trafficking victim, of which Defendant and the other Hotel employees knew or should have known. These included Plaintiff's young age, Plaintiff being required to openly stand or meet buyers outside at the Hotel and then accompany them into her Hotel room for short periods of time, all the while Plaintiff was dressed in revealing or inappropriate clothes and while she was being monitored and watched by her trafficker.

24.

Plaintiff's sex trafficker operated openly and brazenly at the Hotel, as did other sex traffickers. In addition to Plaintiff A.R.'s trafficking, there were numerous other sex trafficking victims at the Hotel at any given time and numerous other traffickers controlling those girls at the Hotel.

25.

Due to the high number of victims being sold for sex at the Hotel, a large number of buyers frequented the Hotel each day. Defendant knew or should have

known that this was an indication of sex trafficking, and minor sex trafficking, at the Hotel.

26.

Defendant knew or should have known that the Hotel served as an open market for sex, including with victim A.R., based on all of the obvious activity that would occur in the open and public areas on Defendant's Hotel property, particularly the backside of the property.

27.

A.R. was ultimately rescued at the Knights Inn in an undercover police sting operation on November 2, 2016. The undercover officer with the Dekalb County Vice Unit located A.R. being advertised for sale on Backpage.com and then texted the phone number listed and arranged to meet A.R. at the backside of the Hotel. When the officer arrived, A.R. was standing outside on the balcony waiting to meet the officer.

28.

A.R.'s sex trafficker was arrested at the Hotel and then eventually plead guilty to the felony of pimping a child under the age of 18 years old and received a 10 year sentence.

**<u>Defendant's Knowledge of Prior Crime and Sex Trafficking at the Hotel, Including Numerous Other Sex-Trafficking Lawsuits</u>**

29.

For many years prior to, during, and after Plaintiff's trafficking, the Hotel was rampant with other instances of sex trafficking, prostitution, crimes against women, dangerous illegal activity, drugs, and violence. As some examples:

30.

Just prior to Plaintiff A.R.'s trafficking, in April 2016, another 16-year old minor sex trafficking victim, M.P., was rescued at the Hotel by the DeKalb County police. M.P. was rescued when a 15-year old victim called to report that she was robbed at gunpoint at the Hotel. The 16-year-old and the 15-year-old then both advised the police that they were working for a pimp at the Hotel. The trafficker was arrested, and on June 23, 2014 the trafficker pled guilty to Keeping a Place of Prostitution and Pimping in the Superior Court of Clayton County. Given this incident, the Hotel knew or should have known that child sex trafficking was occurring at its Hotel. M.P. previously sued the Hotel for her trafficking.

31.

Another sex-trafficking victim identified as K.M. has previously sued the Knights Inn Hotel alleging that she was sex trafficked from November 2013 through 2016 at the Knights Inn Hotel. K.M. alleges that the Knights Inn Hotel staff had a continuous business relationship with K.M.'s sex trafficker during this entire time. K.M. also alleges that the Hotel employees would warn the sex trafficker when there

was too much activity occurring at the room but would then either allow the trafficker to continue renting the room or move the trafficker to another room. Additionally, K.M. alleges that at least one Hotel manager had sex with a sex trafficking victim at the Hotel.

32.

Another sex-trafficking victim identified as C.P. has previously sued the Knights Inn Hotel alleging that she was sex trafficked as a 16-year old child at the Hotel from approximately January 2014 through May 2014. C.P. alleged that the Knights Inn employees also placed her at the back of the Hotel because it was an area that was almost entirely occupied by traffickers selling females for sex.

33.

Another sex-trafficking victim identified as I.D. has previously sued the Knights Inn Hotel alleging that she was sex-trafficked at the Hotel beginning as a 14-year old child in October 2017 and continuing until she was approximately 17 years old in February 2021. I.D. alleges that the Knights Inn also rented rooms to her traffickers on the backside third floor of the Hotel, just like the Knights Inn rented rooms to Plaintiff A.R.'s trafficker in the same area.

34.

Another sex-trafficking victim identified as K.S. has previously sued the Knights Inn Hotel alleging that she was sex-trafficked at the Hotel beginning as a

16-year old child in approximately May 2015 and continuing through September 2017. K.S.'s time at the Knights Inn, overlaps with Plaintiff A.R.'s time at the Knights Inn.

35.

The Knights Inn Hotel knew or should have known about the sex-trafficking of multiple other victims at the Hotel, including the sex-trafficking of each of M.P., K.M., C.P., I.D. and K.S., as set forth above.

36.

Before and during Plaintiff's sex trafficking at the Hotel, Defendant and other Hotel employees knew or should have known about the crime, including specifically the sex trafficking occurring at the Hotel.

37.

Prior to Plaintiff's sex trafficking at the Hotel, Defendant and other Hotel employees knew or should have known that rooms at the Hotel (particularly on the backside of the Hotel) were frequently used for short interactions of commercial sex with guests being trafficked at the Hotel.

38.

Prior to and during Plaintiff's trafficking at the Hotel, the premises and its approaches were known for crime, prostitution, and sex trafficking, which is why

Plaintiff's sex trafficker kept Plaintiff at the Hotel to be sold for sex there. In short, Defendant provided a busy market for just that type of illegal activity.

**Defendant's Negligent Failure to Act**

39.

Defendant and the other Hotel employees knew or should have known that obvious sex trafficking, including Plaintiff's sex trafficking, was occurring every day at the Hotel.

40.

Despite this knowledge, Defendant negligently and recklessly allowed the crimes perpetrated against Plaintiff and other sex trafficking victims to continue.

41.

Despite the dangerous, illegal, and criminal activity at the Hotel, Defendant negligently failed to implement appropriate security measures, policies, procedures, or training to identify, deter, or reduce such activity.

42.

Despite having actual or constructive knowledge of this illegal activity, Defendant negligently failed to take reasonable and necessary steps to stop such illegal and dangerous activities from occurring.

43.

Additionally, Defendant negligently failed to provide proper training to its employees, including among other things, training them on the warning signs that prostitution or sex trafficking may be occurring at the Hotel.

44.

Defendant also negligently failed to provide proper training to its employees on what they were supposed to do if they saw or suspected that dangerous or illegal activity, prostitution, or sex trafficking was occurring at the Hotel.

45.

Defendant also negligently failed to train its staff in a reasonable and uniform manner, including, among other things, on how the staff were supposed to interact with the police and attempt to determine the nature and cause of crime occurring at the property, so that the Hotel could better deter or prevent crime in the future.

46.

Defendant also negligently failed to develop a reasonable security plan to deter and prevent dangerous, violent, and illegal activity from continuing to occur at the property, including specifically prostitution, pimping, sex crimes, violence against women, and sex trafficking.

47.

Defendant knew or should have known that it was permitting the Hotel to be used as a place of prostitution and sex trafficking.

**Defendant's Knowledge of Sex Trafficking Generally**

48.

Defendant knew or should have known of the existence of sex trafficking and its illegality more than 20 years ago, since the passage of the Trafficking Victims Protection Act in 2000, and the United Nations' adoption of the Palermo Protocol, to prevent, suppress, and punish trafficking in persons.

49.

Defendant knew or should have known that during the relevant period Atlanta was a hub of sex trafficking and that the crime was prevalent in the city, including at the Hotel. According to a well-publicized study commissioned by the U.S. Department of Justice, Atlanta had one of, if not the, largest illegal sex trafficking economies in the country.[2] In 2007, Atlanta's sex trafficking economy was worth

[2] *See* Christian Boone, *Study: Atlanta's Sex Trade Highly Profitable*, Atlanta Journal-Constitution, (March 13, 2014) https://www.ajc.com/news/crime--law/study-atlanta-sex-trade-highly-profitable/GiuU5vZdoUo5vdUYSaOBNM/ (last visited May 21, 2026); *see also* Meredith Dank, et.al, *Estimating the Size and Structure of the Underground Commercial Sex Economy in Eight Major US Cities*, Urban Institute, (March 12, 2014), 30-32, *available at* https://www.urban.org/research/publication/estimating-size-and-structure-underground-commercial-sex-economy-eight-major-us-cities (last visited May 21, 2026).

$290 million annually, and traffickers reported average *weekly* earnings of roughly $33,000. Over the last two decades, sex trafficking has generated billions of dollars in illicit profits in metro Atlanta alone. Defendant has received and retained some of those illicit profits through renting Hotel rooms used for the trafficking of Plaintiff and other victims.

50.

Defendant knew or should have known of the Atlanta area's well-publicized reputation as an "epicenter for human trafficking, [] particularly child sex trafficking,"[3] and as "the number one city for child sex trafficking."[4]

51.

Defendant knew or should have known that the Hotel and the surrounding the Hotel was known to be common and notorious locations for prostitution, sex crimes, and sex trafficking to occur. That is why Plaintiff's trafficker sold her there.

52.

Defendant knew or should have known that Hotels are "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been

---

[3] Sally Yates, Remarks at Justice Department Event Marking National Slavery and Human Trafficking Prevention Month, (Jan. 29, 2015), *available at* https://www.justice.gov/opa/speech/acting-deputy-attorney-general-sally-quillian-yates-delivers-remarks-justice-department (last visited May 21, 2026).
[4] *Id.*

employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers[.]" City *of Los Angeles v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice Roberts and Justice Thomas).

53.

Defendant knew or should have known the following: The National Human Trafficking Hotline has reported that ninety-two percent of the calls it received involving Hotels and Hotels reported sex trafficking, and another two percent reported a combination of sex and labor trafficking.[5] And the Polaris Project found that "75% of [trafficking] survivors responding to Polaris's survey reported coming into contact with Hotels at some point during their exploitation . . . . Unfortunately, 94% also disclosed that they never received any assistance, concern, or identification from Hotel staff."

54.

Defendant knew or should have known that the organization called End Child Prostitution and Trafficking (ECPAT-USA) launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States in 2004.[6]

---

[5] *Human Trafficking and Hotels & Hotels*, Polaris Project, https://polarisproject.org/human-trafficking-and-hotels-Hotels/ (last visited May 21, 2026).
[6] *See The Tourism Child-Protection Code of Conduct*, ECPAT-USA, *available at* www.ecpatusa.org/code/ (last visited May 21, 2026).

55.

Defendant knew or should have known that the Code, which lays out well-established best practices for the hospitality industry to identify, address, and deter sex trafficking, identifies six reasonable and logical steps Hotels can take:

a. establish corporate policy and procedures against sexual exploitation of children;

b. train employees in children's rights, the prevention of sexual exploitation and how to report suspected cases;

c. include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children;

d. provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases;

e. support, collaborate and engage stakeholders in the prevention of sexual exploitation of children; and

f. report annually on the company's implementation of Code-related activities.

56.

Defendant knew or should have known that ECPAT is only one of several high-profile organizations that have for years given Hotels the tools to address the scourge of sex trafficking at Hotels.

57.

Defendant knew or should have known that during the relevant period the Department of Homeland Security ("DHS") published guidelines to help Hotels detect and respond to human trafficking. DHS's guidelines instruct housekeeping, maintenance, front desk, and security, among other Hotel personnel, to be vigilant in looking for signs of human trafficking at Hotels and Hotels, such as:

a. persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

b. persons who lack freedom of movement or are constantly monitored;

c. persons who have no control over or possession of money or ID;

d. persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

e. requests for room or housekeeping services (additional towels, new linens, etc.), but denial of Hotel staff entry into the room;

f. the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g. extended stay with few or no personal possessions in the room;

h. excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

i. the same person reserves multiple rooms;

j. a room is rented hourly, less than a day, or for an atypical extended stay;

k. attempts to sell items to or beg from patrons or staff;

l. cars in the parking lot regularly parked backward, so the license plates are not visible;

m. loitering and solicitation of male patrons;

n. waiting at a table or bar and picked up by a male (trafficker or customer);

o. persons asking staff or patrons for food or money; and

p. persons taking cash or receipts left on tables.

58.

Without a market, a place for the buying and selling of humans for sex, sex trafficking would cease to exist. Defendant, for a fee, provided that market, a private and anonymous market for Plaintiff to be sold for sex at its Hotel.

**COUNT I:**

**STATUTORY LIABILITY: SEX TRAFFICKING 18 U.S.C. §§ 1591, 1595**

59.

Plaintiff incorporates the paragraphs above as if fully restated herein.

60.

In violation of the Trafficking Victims Protection Reauthorization Act (“TVPRA”), 18 U.S.C. § 1595(a), Defendant knowingly benefitted from

participation in a venture that Defendant knew or should have known engaged in acts in violation of the TVPRA.

61.

Defendant knowingly benefitted from Plaintiff's sex trafficking by receiving revenue generated by the operation of the Hotel, including the revenue generated for the room in which Plaintiff was trafficked. Each day Plaintiff was trafficked at the Hotel, Defendant knowingly benefitted by receiving money from Plaintiff's trafficking in the form of room-rental fees.

62.

Defendant participated in a Hotel venture and knew or should have known that its operation of the Hotel violated the TVPRA by harboring and falsely imprisoning Plaintiff so that she could be sold for sex at the Hotel Defendant also participated in a venture by actively cooperating with, accepting bribes from, serving as a lookout for, and allowing Plaintiff's sex trafficker to harbor, falsely imprison, and traffic Plaintiff at the Hotel.

63.

As part of her sex trafficking, Plaintiff was falsely imprisoned at the Hotel. Defendant also participated in a venture by actively cooperating with, accepting bribes from, serving as a lookout for, and allowing Plaintiff's sex traffickers to harbor, falsely imprison, and traffic Plaintiff at Defendant's Hotel.

64.

The venture in which Defendant participated was in or affecting interstate commerce.

65.

Defendant knew or should have known the venture engaged in acts in violation of the TVPRA because Defendant's agents, employees, and representatives participated in Plaintiff's child sex trafficking at the Hotel. Defendant knew or should have known of this participation.

66.

Defendant also knew or should have known the venture engaged in acts in violation of the TVPRA because Defendant's agents, employees, and representatives knew or should have known of other sex trafficking and illegal criminal activity occurring at the Hotel.

67.

Defendant is directly and vicariously liable under 18 U.S.C. § 1595(a) for the actions of its agents and representatives.

68.

Plaintiff has suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Defendant's participation in this venture.

69.

Defendant is liable to Plaintiff for her damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

70.

Defendant is liable for damages arising from the indivisible injuries it caused Plaintiff, whose damages were proximately caused by the acts discussed in this count.

71.

Plaintiff was under the age of 18 when she was trafficked at the Hotel.

72.

Plaintiff was a victim of violations of 18 U.S.C. § 1591 at the Hotel.

73.

As described herein, Defendant knowingly benefitting from participating in a venture that he knew or should have known engaged in an act of sex trafficking at the Hotel, including the harboring and other trafficking activities which harmed Plaintiff.

74.

Plaintiff suffered injuries as a result of Defendant's violations of 18 U.S.C. § 1591, and Defendant faces liability under such statute.

75.

Thus, as described herein, Defendant is liable to Plaintiff for compensatory and punitive damages, in an amount to be determined at trial.

## COUNT II
## NUISANCE

76.

Plaintiff incorporates the paragraphs above as if fully restated herein.

77.

O.C.G.A. § 41-1-1 provides that "A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man."

78.

O.C.G.A. § 41-1-2 provides that "Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals."

79.

O.C.G.A. § 41-1-3 provides that "A public nuisance generally gives no right of action to any individual. However, if a public nuisance in which the public does not participate causes special damage to an individual, such special damage shall give a right of action."

80.

O.C.G.A. § 41-3-1 provides that "Whosoever shall knowingly erect, establish, maintain, use, own, or lease any building, structure, or place for the purposes of sexually related charges shall be guilty of maintaining a nuisance; and the building, structure, or place, and the ground itself in or upon which such sexually related charges occurred or were conducted, permitted, carried on, continued, or shall exist, and the furniture, fixtures, and other contents of such building or structure shall be deemed to be a nuisance."

**Public Nuisance**

81.

The Hotel's history of rampant crime and illegal sex activity created a spillover effect that led to other crime occurring in the surrounding area.

82.

The Hotel caused or contributed to a blighting effect on the surrounding community, so that the Hotel negatively damaged all persons who came within the

sphere of operation of the crime, sex trafficking, and prostitution at the Hotel, although the effects on each person may have varied.

83.

The illegal prostitution and sex trafficking nuisance occurring at the Hotel had an appreciable blighting effect on the surrounding community, permitting persons of questionable character, and encouraged idleness, loitering, vagrancy, and had a tendency to breed crime and debauch the morals of the community.

84.

The acts and omissions of Defendant in permitting prostitution and sex trafficking at the Hotel caused special damages to Plaintiff, as she was the victims of child sex trafficking at Defendant's nuisance hotel and suffered damages to her health, including mental and emotional harm, pain and suffering, and Defendant is liable to Plaintiff for all such damages.

**Public Nuisance Per Se**

85.

The Hotel constituted a statutory nuisance per se under Georgia law because Defendant knowingly and/or negligently turned a blind-eye and permitted illegal sexually related crimes to occur at the Hotel including sex trafficking.

86.

A business where illegal practices are permitted constitutes a nuisance.

87.

A business, like the Hotel, that allows prostitution and sex trafficking is a per se public nuisance under Georgia law. *Brindle v. Copeland*, 145 Ga. 398, 89 S.E. 332 (1916) ("A lewd house is per se a 'public nuisance.'").

88.

Plaintiff was directly harmed as a result of the sex crime nuisance at the Hotel that permitted illegal sexual activity to occur there.

89.

Defendant is liable for nuisance (public nuisance and/or per se public nuisance) by reason of its failure to remedy the dangerous condition of prostitution and sex trafficking that persisted over a period of time as a continuous and repetitious condition and of which Defendant had express notice and knowledge, and whereby Plaintiff was a direct victim of such activity.

**DAMAGES**

90.

Plaintiff incorporates the paragraphs above as if fully restated herein.

91.

As a proximate and foreseeable result of Defendant's violations of the TVPRA, and Georgia law, Plaintiff sustained personal injuries, mental and emotional pain and suffering, experienced mental anguish, and suffered other damages as will be proven at trial. Plaintiff brings each and every claim permissible

under Georgia and federal law against Defendant for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under Georgia and federal law. Plaintiff seeks all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under Georgia and federal law, including, but not limited to:

a. Personal injuries;
b. Past, present and future conscious pain and suffering;
c. Loss of enjoyment of life;
d. Mental anguish and emotional distress;
e. Incidental expenses;
f. All special, compensatory, economic, punitive, and other damages permissible under Georgia and federal law; and
g. Consequential damages to be proven at trial.

92.

Plaintiff is entitled to an award of punitive damages without limitation or cap because the actions of Defendant and its employees were willful and wanton and showed an entire want of care, which raises the presumption of a conscious indifference to consequences.

93.

Defendant's actions evidence a species of bad faith, were and are stubbornly litigious, and have caused Plaintiff undue expense. Thus, Plaintiff is entitled to recover her necessary expenses of litigation, including an award of reasonable attorneys' fees and expenses required by this action. (O.C.G.A. §§ 13-6-11, 9-11-68 and 9-15-14, and 18 U.S.C. § 1595(a)). Furthermore, Plaintiff is entitled to all expenses of litigation and attorneys' fees pursuant to all other Georgia and federal statutory and common laws.

WHEREFORE, Plaintiff prays for a judgment to be awarded to her and against Defendant for the following:

a. Process issue as provided by law;
b. Plaintiff be awarded actual damages in amounts to be shown at trial from Defendant;
c. Plaintiff be awarded all general, special, compensatory, economic, consequential, punitive and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendant;
d. Plaintiff be awarded a trial by jury; and
e. Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.

TRIAL BY JURY IS HEREBY DEMANDED.

This 30th day of October, 2026.

**ANDERSEN, TATE & CARR, P.C.**

/s/ *Tyler Dillard*
Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Tyler Dillard
Georgia Bar No. 115229
tdillard@atclawfirm.com
Jonathan S. Tonge
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Tyler Dillard*

PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
TYLER DILLARD
Georgia Bar No. 115229
tdillard@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile